IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMES HEATH | : | CIVIL ACTION |
| | : | NO.  11-2779 |
| v. | : | |
| | : | |
| AUDATEX NORTH AMERICA, INC & | : | |
| SOLERA HOLDINGS, INC | : | |

O'NEILL, J.                                                        JANUARY 23, 2012

<u>**MEMORANDUM**</u>

Plaintiff James Heath brought an employment discrimination action against defendants

Audatex North America and its parent company Solera Holdings.  Audatex answered and

asserted several counterclaims against Heath, all relating to separate litigation that was brought

against Audatex by entities that are not a party to this litigation.  Heath answered Audatex's

counterclaims and asserted affirmative defenses based upon Audatex's alleged duty to indemnify

Heath.  Now before me are Audatex's motion to strike Heath's indemnification affirmative

defenses, Heath's motion for leave to file a counterclaim for indemnification, attorney fees and

costs and the parties' responses thereto.  For the reasons that follow, I will grant Audatex's

motion to strike and deny Heath's motion for leave to file a counterclaim.

BACKGROUND

Heath's Complaint alleges the following facts.  Heath started working for Audatex in

June of 2007 as Vice President of Corporate Accounts.  Compl. ¶ 15.  The principal place of

business of Audatex (both the parent and the wholly owned subsidiary) is in California, <u>id.</u> ¶¶ 5-

6, but Heath worked in Pennsylvania.  <u>Id.</u> ¶ 15.  Heath was "one of the top producers for"

Audatex, <u>id.</u> ¶ 25, and his accomplishments included securing a contract with Avis Budget

Group.  Id. ¶ 30.  Audatex knew that Avis had an existing contract with Mitchell International, one of Heath's prior employers, but instructed Heath to procure a contract with Avis anyway.  Id. ¶ 29.

Heath went on medical leave on April 1, 2009 due to rheumatoid arthritis and underwent a total hip replacement on June 16, 2009.  Id. ¶¶ 31 & 33.  Audatex terminated Heath on July 10, 2009, claiming that Heath's position was being eliminated.  Id. ¶¶ 34-35.  Heath was fifty-four years old at the time.  Id. ¶ 34.  He alleges in his Complaint that Audatex unlawfully discriminated against him because of his age, his disability and his decision to go on medical leave.  See Compl. ¶¶ 41-66.  Heath also claims that his employment was terminated because Audatex expected him to testify in litigation involving Avis and Mitchell concerning the Avis-Audatex contract.  Id. ¶ 63.

Audatex has filed an Answer and brought counterclaims against Heath.  Audatex's counterclaims assert the following facts.  When Audatex hired Heath, he signed agreements promising not to use prior employers' confidential information or disclose Audatex's confidential information.  Am. Countercl. ¶ 9-10.   In 2009, Mitchell notified Audatex that the Avis-Audatex contract that Heath procured overlapped with an existing contract between Avis and Mitchell.  Id. ¶ 11.  Audatex investigated the matter and ascertained that Heath himself helped procure the Avis-Mitchell contract while he was an employee at Mitchell.  Id. ¶ 13.  Avis later sued Mitchell, Audatex and Heath, alleging among other things fraudulent inducement.  Id. ¶ 14.  Mitchell then brought cross-claims against Audatex based on Heath's alleged misconduct while he worked at Audatex.  Id.

Audatex conducted further investigation and learned that Heath used confidential

information he gained as a Mitchell employee to secure the Avis-Audatex contract.  <u>Id.</u> ¶ 16b.

Audatex also learned that Heath disclosed to Avis confidential Audatex information in the course

of negotiating the Avis-Audatex contract.  <u>Id.</u> ¶ 16c.  Audatex did not learn of Heath's

misconduct until after Audatex terminated Heath's employment.  <u>Id.</u> ¶ 18.  Audatex, Avis and

Mitchell later reached a settlement whose terms are confidential.  <u>Id.</u> ¶ 15.  Audatex asserts

counterclaims against Heath for breach of contract, breach of duty of loyalty and violation of the

Computer Fraud and Abuse Act, 18 U.S.C. § 1030.  <u>See</u> Am. Countercl. ¶¶ 19-49.

Heath's answer to Audatex's counterclaims asserts affirmative defenses that rely on

California Labor Code § 2802.  <u>See</u> Dkt. No. 29.  The Code provides in pertinent part that

> [a]n employer shall indemnify his or her employee for all necessary
> expenditures or losses incurred by the employee in direct
> consequence of the discharge of his or her duties, or of his or her
> obedience to the directions of the employer, even though unlawful,
> unless the employee, at the time of obeying the directions, believed
> them to be unlawful.

Cal. Lab. Code § 2802(a).  "Necessary expenditures or losses" includes "all reasonable costs,

including, but not limited to, attorney's fees incurred by the employee enforcing the rights

granted by" § 2802.  <u>Id.</u> § 2802(c).  The affirmative defenses that rely on § 2802 assert that

Audatex must pay Heath's counsel fees from the Avis/Mitchell litigation and indemnify him in

the present litigation (ninth affirmative defense) and indemnify him for expenditures and losses

that resulted from the discharge of his duties at Audatex (thirteenth).  Heath also asserts that

Audatex cannot recover on its counterclaims because it has a duty to indemnify him (fourteenth).

A week after answering Audatex's counterclaims, Heath moved for leave to file a

counterclaim to Audatex's counterclaim.  <u>See</u> Dkt. No. 31.  Relevant to the motions now before

me is the allegation in Heath's proposed counterclaim that Audatex's litigation with Avis and Mitchell took place in California state court.  Dkt. No. 31-3 ¶ 18.  Heath seeks indemnification, attorney fees and costs.  Id. ¶¶ 25-35.  Audatex opposes Heath's motion and moves to strike Heath's affirmative defenses that rely on the California Labor Code.  See Dkt. Nos. 33 & 32.

DISCUSSION

I.    Heath's Motion for Leave to File a Counterclaim

As a preliminary matter I must decide how to characterize Heath's motion.  Although the motion requests leave to "file a counterclaim," Audatex argues that Heath's motion is controlled by Federal Rule of Civil Procedure 15, which governs amendments to pleadings.  This Court has previously stated that a plaintiff's counterclaim in reply to a defendant's counterclaim should be deemed an amendment to the complaint.  Se. Indus. Tire Co. v. Duraprene Corp., 70 F.R.D. 585, 588 (E.D. Pa. 1976) (Becker, J.) ("Lest the trier of fact be confronted with a veritable [b]arrage of legal documents, we believe that, for reasons of clarity and practicality, it would be better to treat the counterclaim in reply as an amendment to the complaint.").

Unlike the plaintiff in Southeast Industrial Tire Co., however, Heath has filed a separate motion for leave to file a counterclaim rather than include the counterclaim in his answer to defendants' counterclaim.  Under the Federal Rules, a counterclaim is not a stand-alone pleading. See Fed. R. Civ. P. 7(a) (omitting "counterclaim" from types of allowed pleadings).  Instead, a counterclaim is to be included in a pleading.  See Fed. R. Civ. P. 13(a) & (b) (explaining instances where "[a] pleading must state as a counterclaim" and where "[a] pleading may state as a counterclaim").  Rather than require Heath to file an amended answer to Audatex's counterclaim, however, I will simply construe Heath's motion for leave to file a counterclaim as

a motion to amend the Complaint.

Rule 15 provides in pertinent part that a party may amend its pleading with the Court's leave and that "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "Among the grounds that could justify a denial of leave to amend are undue delay, bad faith, dilatory motive, prejudice, and futility." In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997). "The District Court determines futility by taking all pleaded allegations as true and viewing them in a light most favorable to the plaintiff." Winter Family Trust v. Queen, 503 F.3d 319, 331 (3d Cir. 2007).

Audatex argues that Heath's proposed new claims, all of which rely on California law, are futile because the law of Pennsylvania, not California, applies to this case. Accordingly, I must determine whether the Pennsylvania or California law governs. The parties agree that I must apply Pennsylvania's choice-of-law rules. "Pennsylvania choice-of-law analysis consists of two parts. First, the court must look to see whether a false conflict exists." LeJeune v. Bliss-Salem, Inc., 85 F.3d 1069, 1071 (3d Cir. 1996). "A false conflict exists if only one jurisdiction's governmental interests would be impaired by the application of the other jurisdiction's law." Lacey v. Cessna Aircraft Co., 932 F.2d 170, 187 (3d Cir. 1991). Second, "if there is no false conflict, the court determines which state has the greater interest in the application of its law." LeJeune, 85 F.3d at 1071.

Audatex argues that there is a true conflict between the law of California and Pennsylvania "[b]ecause California law affords employees a substantial protection and imposes upon employers a substantial obligation not provided by Pennsylvania law." Dkt. No. 32-1 at 6. It is true that the California Labor Code generally requires an employer to indemnify its

5

employees "for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties," Cal. Lab. Code § 2802(a), whereas Pennsylvania law imposes no such obligation on employers.  But my conflict analysis cannot end here, as the mere difference between the law of California and Pennsylvania does not create a true conflict.  See Hammersmith v. TIG Ins. Co., 480 F.3d 220, 230 (3d Cir. 2007).  Instead, I must "examine the governmental policies underlying each law" and determine if each state's interests would be impaired by the application of the other state's law.  Id.  There is a true conflict only if both states' interests would be impaired.  Id.

I must therefore examine the burden on the California and Pennsylvania interests at stake here.  California Labor Code § 2802 "shows a legislative intent that duty-related losses ultimately fall on the business enterprise, not on the individual employee."  Janken v. GM Hughes Elecs., 53 Cal. Rptr. 2d 741, 753 n.24 (Cal. Ct. App. 1996).  The application of Pennsylvania law would impair California's interest in requiring employers in the state to indemnify their employees. Pennsylvania, on the other hand, does not have a statute analogous to California Labor Code § 2802.  While I am mindful that "[l]egislative inaction . . . is a weak reed upon which to lean in determining legislative intent," McKenna v. Ortho Pharm. Corp., 622 F.2d 657, 665 (3d Cir. 1980) (internal quotation marks omitted), I can infer that Pennsylvania has an interest in not requiring employers to indemnify employees who work in Pennsylvania.  More generally, "Pennsylvania has a significant interest in regulating employers located and doing business in the state according to Pennsylvania's own traditions and principles of law."  Berrodin v. Med. Components, Inc., No. 03-5572, 2004 WL 2260671, at *3 (E.D. Pa. Oct. 7, 2004).  The application of California law would impair Pennsylvania's interests by conferring a benefit to

Heath that Pennsylvania does not confer to its in-state employees.  Accordingly, each state would have its interests impaired by the application of the other state's laws and a "true conflict" exists.

I will now consider "which state has the greater interest in the application of its law." LeJeune, 85 F.3d at 1071.  In deciding which state has the greater interest I analyze each state's "contacts establishing significant relationships" and conduct a "qualitative appraisal of the relevant States' policies with respect to the controversy."  Hammersmith, 480 F.3d at 231.  In reviewing each state's contacts, I "must weigh [them] on a qualitative scale according to their relation to the policies and interests underlying the [indemnification] issue."  Shields v. Consol. Rail Corp., 810 F.2d 397, 400 (3d Cir. 1987).

I accept the following well-pled facts and view them in the light most favorable to Heath: Heath is a Pennsylvania resident who worked for Audatex in Pennsylvania.  California, on the other hand, is the home of Audatex.  Heath acted at the direction of Audatex at all times. Additionally, the litigation involving Audatex, Avis and Mitchell took place in California.[1]

These contacts favor the application of Pennsylvania law.  The harm for which Heath seeks indemnification, i.e. Heath's losses, took place in Pennsylvania.  Heath's conduct that allegedly gave rise to the Avis/Mitchell litigation took place in Pennsylvania.  I consider these Pennsylvania contacts more significant than Audatex's California residence and the fact that litigation involving Audatex, Avis, Mitchell and Heath took place in California.

---

[1]        Heath's reply to Audatex's opposition to his motion for leave to file a counterclaim references an additional "fact" that does not appear anywhere in the pleadings. There, Heath mentions for the first time that the severance agreement between Audatex and Heath included a California choice-of-law provision.  Dkt. No. 35 at 9.  I do not consider this fact because it was not pleaded.  Even if I did consider the severance agreement, it would carry no weight because Heath did not sign it.  See Dkt. No. 35-1 at 19.

Additionally, Pennsylvania has the greater policy interest in this matter.  California's interest in applying its indemnification law to a non-resident employee who performed no work in California is weak.  Heath cites to no case in which California Labor Code § 2802 was applied to an employee who neither resided in California nor worked there.  On the other hand, Pennsylvania has a strong interest in ensuring that individuals who live and work in the state are governed according to Pennsylvania law.

In sum, Pennsylvania law applies.  Heath's proposed counterclaims are futile because they all rely on California law.  Accordingly, I will deny Heath's motion.

II.     Audatex's Motion to Strike Affirmative Defenses

I "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  "[A] court should not grant a motion to strike a defense unless the insufficiency of the defense is clearly apparent."  Cipollone v. Liggett Group, Inc., 789 F.2d 181, 188 (3d Cir. 1986) (internal quotation marks omitted).  I may strike an affirmative defense on the ground that it relies on state law that does not apply to the case.  See Angel v. Ray, 285 F. Supp. 64, 66 (D. Wis. 1968) (concluding that Wisconsin law governs the case and striking a portion of an affirmative defense that cited to Tennessee law).

Audatex argues that Heath's indemnification affirmative defenses are insufficient because they rely on the California Labor Code and the law of Pennsylvania, not California, applies to this action.  Having already determined that Pennsylvania law governs this case, I agree.  I will therefore grant Audatex's motion to strike Heath's affirmative defenses nine, thirteen and fourteen, all of which rely on the California Labor Code.

An appropriate Order follows.